**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: MARNIE MARIE ANDREW, | ) | Case No. 04-01685-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| MARNIE MARIE ANDREW, | ) | Adv. No. 04-00062A |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORPORATION, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**MEMORANDUM**

This matter comes before the court by way of a complaint filed by Marnie Marie Andrew ("the Plaintiff") against Educational Credit Management Corporation ("the Defendant") seeking a declaration that debts arising from a loan made for an educational benefit by a governmental unit is not non-dischargeable under 11 U.S.C. § 523(a)(8). Judgment shall be entered in favor of the Defendant.

*Facts.*

Between November of 1990 and July of 1994, the Plaintiff executed four notes

1

evidencing debts totaling $17,419.00[1] (collectively "the Debt") to various loan agencies. Payments were deferred until the date on which the Plaintiff was no longer in school. In May of 1995, the Plaintiff graduated from Purdue University with two bachelor's degrees, one in communications and one in speech and audiology.[2] The Plaintiff has never held a position in the filed of speech and audiology.[3] In 1996, the Plaintiff began making her payments as they came due, with the exception of a few deferments while her husband was in school.

From August of 1997, through June of 2000, the Plaintiff was employed in Indiana as a Work Readiness Specialist where she earned gross income of $2,250.00 per month. From June of 2000 through August of 2002, she held a position as a director of Educational Initiatives for the Bloomington, Indiana, Chamber of Commerce. She earned gross income of $3,333.33 per month and net income of $2,580.32 per month. She left that position to relocate to Henry County where her husband had previously found employment as an attorney.

The Plaintiff testified[4] that, from August of 2002 until the present, she has been unable to find full-time permanent employment, despite a concerted effort.[5] She also testified that she sought employment from the time that she moved to Henry County in 2002 until she was about six months pregnant. Six months later, after her son was 3 months old, she began seeking

---

[1] Testimony of Plaintiff. See Transcript of Trial, p. 38, l. 24 to ;. 39., l 1. Affirmed by counsel for the Plaintiff. See Transcript of Trial, p. 39, l. 14-15.

[2] Testimony of Plaintiff. See Transcript of Trial, p. 7, l. 10-15. The Plaintiff explained that she would be unable to work in the speech and audiology field without a master's degree, so she sought a communications degree simultaneously when her money began to run out.

[3] Testimony of Plaintiff. See Transcript of Trial, p. 12, l. 22-23.

[4] The court found the plaintiff to be a very credible witness.

[5] The Plaintiff testified that "[t]he first year I was here I didn't have a child and that's all I did was look for job." See Transcript of Trial, p. 51, l. 22-24.

2

employment again.[6] She further testified that she sought employment in the communications field [7] in Roanoke, Greensboro (North Carolina), Danville, Lynchburg, and Martinsville.[8]

During this time her husband paid all of their household expenses, even taking deferments of his own student loans when necessary.[9] The Plaintiff and her husband bargain-shop for their clothes and purchased their son's clothes from consignment shops.[10] The Plaintiff continued to make payments on the Debt until at least April of 2004.[11]

The Plaintiff is currently employed in a temporary grant-funded[12] position as a Career Readiness Specialist for Patrick Henry Community College, a job that began on November 29, 2004 and that terminates on June 30, 2005[13]. Her Gross Income is $1,750.00 per month; her net income is $1,457.73 per month.

The Plaintiff has one child, a son who was born in September of 2004. She is expecting a second child.

---

[6] Testimony of Plaintiff. See Transcript of Trial, p. 12, l. 11-16.

[7] Testimony of Plaintiff. See Transcript of Trial, p. 13, l. 15-22.

[8] Testimony of Plaintiff. See Transcript of Trial, p. 38, l. 11-18.

[9] Testimony of Plaintiff. See Transcript of Trial, p. 52, l. 1-5.

[10] Testimony of Plaintiff. See Transcript of Trial, p. 34, l. 9-11.

[11] The Plaintiff testified that her last payment was actually made on May 4, 2004. Testimony of Plaintiff. See Transcript of Trial, p. 28, l. 21-24. The Plaintiff testified that she made the payments using tax returns and savings. Testimony of Plaintiff. See Transcript of Trial, p. 40, l. 1-4.

[12] Testimony of Plaintiff. See Transcript of Trial, p. 7, l. 1-3.

[13] Defendant's Exhibit B, Defendant's First Set of Interrogatories, Interrogatory 4. Also see Testimony of Plaintiff, Transcript of Trial, p. 6, l. 18-20.

The Plaintiff now owes the Defendant approximately $11,415.40.[14]  Her current monthly payments due under the obligation are $177.66.[15]

On April 29, 2004, the Plaintiff filed the instant chapter 7 petition.  On August , 2004, she filed the instant complaint.

*Discussion*

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) & (I).   Accordingly, this court may render a final judgment.  The Plaintiff seeks a order declaring that the Debt was discharged in her chapter 7 case.  The Defendant asserts that the debts are excepted from discharge by 11 U.S.C. § 523(a)(8).

Section 523(a)(8), as applicable, provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
. . .
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

In this case, the parties agree that the Debt arises from an educational benefit insured or guaranteed by a governmental unit.  Accordingly, the burden shifts to the Plaintiff to demonstrate that excepting the Debt from discharge will impose an undue hardship on her and her dependents.

---

[14] Statement of Counsel for the Defendant at trial.  See Transcript of Trial, p. 15, l. 23-25.  The Plaintiff testified that she agreed with the statement.  See Transcript of Trial, p. 18, l. 5-10.

[15] Testimony of Plaintiff.  See Transcript of Trial, p. 19, l. 7-12.

4

Under the undue-hardship test, a Plaintiff must establish (1) that he or she cannot maintain a minimal standard of living for himself or herself and his or her dependents, based upon his or her current income and expenses, if he or she is required to repay the student loans; (2) that additional circumstances indicate that his or her inability to do so is likely to exist for a significant portion of the repayment period of the student loans; and (3) that he or she has made good faith efforts to repay the loans.  See Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2nd Cir. 1987) (per curiam). (Cited with approval by the Fourth Circuit Court of Appeals in Ekenasi v. The Education Resources Institute, et al. (In re Ekenasi), 2003 WL 1879012 (4th Cir. April 16, 2003)).   Also see Commonwealth of Virginia State Education Assistance Authority v. Dillon (In re Dillon), 189 B.R. 382, 384 (W.D.Va. 1995).

The burden is on the plaintiff to satisfy each element of the Brunner test before the student loan can be discharged.  See In re Faish, 72 F.3d (3rd. Cir. 1995).  She must prove each element by a preponderance of the evidence.  Cf. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed. 2d 755 (1991)  (Holding that a plaintiff must prove the elements under 11 U.S.C. § 523(a)(6) by a preponderance of the evidence.)  If the court finds against the debtor on just one of the three elements , the inquiry ends and the student loan is deemed non-dischageable.  Alderete v. Educational Credit Management Corporation ( In re Alderete), 2005 WL 1525260 (10th Cir. 2005).

*A.     The Debtor's Current Standard of Living*

Under the first prong of the Brunner test the plaintiff must demonstrate "that he cannot maintain a minimal standard of living for himself and his dependents, based upon his current income and expenses, if he is required to repay the student loans".  Ekenasi 325 F.3d at 546.  The

test requires the court to examine the debtor's actual current income and expenses and determine whether there are funds available to pay the student loans. It must be emphasized that it is the Plaintiff's current income and expenses that are at issue under the first prong of the test.

> That is, before receiving a discharge of student loans the debtor is required to demonstrate that, given his or her *current income and expenses*, the necessity of making the monthly loan payment will cause his or her standard of living to fall below a "minimal" level.

Brunner 46 B.R. at 754 (Summarizing the then existing law with approval and incorporating it as the first prong in the test.) (Emphasis added.).

*1. The Plaintiff's Income.*

In this case, the Plaintiff is married. Even though her spouse did not join her on her bankruptcy petition, the income and expenses of both the Plaintiff and her spouse must be considered in determining whether she can maintain a minimal standard of living for herself and her dependents if the debt is not discharged. See, e.g., White v. United States Department of Education (In re White), 243 B.R. 498, 510 (Bankr. N.D.Ala. 1999) and Dolan v. American Student Assistance, et al. (In re Dolan, 256 B.R. 230, 236 (Bankr. D. Mass. 2000) (and cases cited therein).

The Plaintiff had no monthly income when she filed her petition, as reflected by her Schedule I. Shortly thereafter she obtained temporary employment as a Career Readiness Specialist. Her gross income from that job was $1,750.00 per month gross and her net income was $1,447.73. The job is schedule to end (ended) on June 30, 2005. The Defendant asserts that the job indicates that the debtor's projected annual income for 2005 is $10,500.00 ( = 6 mo. X $1750.00/mo.). If this premise is accepted, then her annual net income for 2005 will be $8,686.38 ( = 6 mo. X $1,447.73/mo.) and her average net monthly income will be $723.86 ( = $8,686.38

per year / 12 months per year).   The Defendant argues that the court should consider the $723.86 to be the Plaintiff's current income.   The court believes that this actually gives the Plaintiff the benefit of the doubt under the first prong of the Brunner test.  Accordingly, the court will accept the Defendant's argument on this point.

The Plaintiff's husband earns $70,000.00 in gross income per year.  In 2003, he paid $4,319.00 in taxes on gross income of $61,292.00.[16]   The Defendant asserts, and the Plaintiff does not challenge, that his taxes were approximately seven percent of his gross income.[17] Because no evidence was introduced at trial concerning whether the $4,319.00 in taxes includes state income taxes, and because the burden is on the Plaintiff to do so, it must be concluded that the $4,319.00 includes both state and federal income taxes.  The amount of $4,319.00 obviously does not include his social security and medicare withholdings, which would have been about 7.5% of his gross income.  If it is assumed that the Plaintiff's husband's federal and state income taxes will total 7% of his income, then his net income may then be estimated at 85.5% (100% - [7.0% + 7.5%]) of his gross income.   The Plaintiff's spouse's net annual income for this year then is $59,850.00 (85.5% X $70,000.00).

Applying the analysis of the first element strictly, and giving the Plaintiff the benefit of the Defendant's assertion that her annual income is $8,750.00, it may be concluded that the relevant net income for both the Plaintiff and her husband for the year 2005 will be $68,536.38 ( = $59,850.00 + $8,686.38) and their monthly net income will average $5,711.36 ( = $68,536.38 per year  / 12 months per year).

---

[16]    Testimony of Plaintiff.  See Transcript of Trial, p. 27, l. 23 to p. 28, l. 1.

[17]    Exchange between the Plaintiff and counsel for the Defendant.  See Transcript of Trial, p. 27, l. 23 to p. 28, l. 3.

7

*2. The Plaintiff's Expenses*

In her interrogatories, the Plaintiff indicated that her household expenses total $5,449.50 per month, not including the $173.00 per month student loan payment and not including payments due pre-petition for debts that have now been discharged. The Defendant did not challenge the Plaintiff's budget.

*3. The Hardship on the Plaintiff.*

The Plaintiff's current disposable income then is $261.86 per month ( = $5,711.36 - $5,449.50), even without challenging any of the Plaintiff's current expenses. The Plaintiff would have disposable income of $88.86 per month after making the payment on her student loans. Furthermore, the Plaintiff may be able to reduce both the interest rate and the monthly payment amount through the Ford Foundation.[18] It cannot be concluded that it would be an undue hardship on the Plaintiff to declare the debt non-dischargeable.

At trial, the Plaintiff argued that her job would be temporary and that she may not be able to find another job in the near future. The problem with that argument is that it concerns the Plaintiff's future financial matters which are properly considered only under the second prong of the Brunner Test. The first prong of the test focuses only on the Plaintiff's current financial situation.

*B. Changes in Circumstances*

Even if the court were to discount the Plaintiff's current income based on the temporary nature of her employment, she has not met her burden of coming forward with evidence that her circumstances are not likely to change during the repayment period under the loan. If the interest

---

[18] Information concerning the Ford Foundation and its programs may be found at http://www.fordfound.org/.

8

rate on the loan(s) is 8%, it will take approximately 7½ years to pay off the loan in full.

Under the second prong of the Brunner test, the plaintiff must demonstrate "that additional circumstances indicate that her inability to [repay the student loans] is likely to exist for a significant portion of the repayment period of the student loans". Ekenasi 325 F.3d at 546. On its face, this prong of the Brunner test would seem to require courts to assess whether the natural course of events will produce an increase in the debtor's disposable income in the foreseeable future. For instance, the debtor chooses a career path that traditionally provides for significant increases in income, then this should be taken into effect under the second prong. This prong, however, requires more. It requires that the court analyze the debtor's future income and expenses to determine whether the debtor should be required to make changes that will increase his or her disposable income. See (United States Department of Education v. Gerhardt (In re Gerhardt), 348 F.3d 89 (5th Cir. 2003)). The debtor is required to hold her expenses to a reasonable level and to make a real effort to achieve an income that is commensurate with the education received.

*1. Income*

In order to meet the second prong of the Brunner test, a debtor is required to seek a position in the field for which he or she has been trained, barring some physical or mental disability preventing him or her from doing so. In Brunner, the debtor, who had incurred debt in order to pay for a B.A. and an M.A. in Social Work, sought to have declared non-dischargeable a student loan debt because of "her shaky finances and her unsuccessful efforts to find work following graduation", before she had obtained employment in her chosen field. Brunner 46 B.R. at 753. The Court's concern was that "[e]xtrapolation of [the debtor's] current earnings is

likely to underestimate substantially [his or her] earning power over the whole term of loan repayment." Brunner 46 B.R. at 756. The debtor's failure to obtain employment before seeking to discharge the student loan was the fact that led the court to conclude that the second prong of the test had not been met.

In Brunner, the debtor could have taken steps to improve her earnings dramatically. In the case at bar, the Plaintiff need only find a way to sustain her income at a level equal to one-half of the amount that she was earning on the date of trial. She would need only generate net income of $635.00 ( = $723.86 - $88.86)[19] per month. And this amount, $635.00 per month, would include any increase in net income that her husband may enjoy during the pendency of the repayment period. The Plaintiff's husband current gross income, $70,000.00, is some $8,581.00 greater than it was during 2003. Given this fact, the court would expect that his income would increase at about 3.5%-4% per year during that period.

*2. The Debtor's Expenses*

There is also some duty imposed on a debtor to keep expenses to a reasonable level. In this case, the Plaintiff's expenses are generally reasonable, but a couple of the expenses, meals outside the home and recreation ($100.00 per month) and cable/internet ($105.00) might be subject to scrutiny.

Taking the Plaintiff's future income potential, her husband's potential future income growth and the debtor's expenses into consideration, it must be concluded the Plaintiff has not met the burden of coming forward with evidence that her circumstances are not likely to change

---

[19] This amount is calculated by taking the amount of her net income under the assumption that she could earn one-half as much as she is earning at the time of the trial, and reducing it by the amount of disposable income that she would have after paying the monthly student loan payment.

during the pendency of the repayment period under the loan.

### C. *The Plaintiff's Repayment Efforts.*

Because the Plaintiff has failed to meet her burden of proof of coming forward with evidence regarding either of the first two prongs of the Brunner test, the court need not consider the third prong.

### D. *Damages.*

In this case the total parties seem to agree regarding the total amount of the debt. During the hearing, the court asked counsel for the defendant how much the Plaintiff owed the Defendant. He responded. "She owes at this point the outstanding principle balance is $11,415."[20] Later, the following exchange occurred.

> Q [Counsel for the Defendant]: That's fine. That's all you need to read. Thank you. Your current outstanding balance you listed on your schedule is $12,000.00. If the records of ECMC indicate that the actual principle outstanding balance is $11,415.40, would you agree with that?
>
> A [The Plaintiff]: Yes, I would.[21]

The amount of the debt is $11,415.40. The Defendant shall be allowed a claim in that amount.

## *Conclusion*

The Plaintiff has failed to meet the burden of coming forward with evidence on either of the first two prongs of the Brunner test. While the court believes that the Plaintiff and her family may have to adhere to a strict budget for a few years, it cannot be said that a finding that the debt

---

[20] See Transcript of Trial, p. 16, l. 24-25.

[21] See Transcript of Trial, p. 18, l. 5-10.

owed to the defendant will impose an undue hardship on her or her dependents as required 11 U.S.C. § 523(a)(8).   Nor is it in the power of this court to grant a partial discharge in the absence of a finding of under hardship under the Brunner test.  <u>See</u>, <u>e.g.</u>,  <u>Alderete</u>, 2005 WL 1525260.

The Defendant's claim shall be allowed in the amount of $11,415.00 only, plus interest at the contract rate from the date of petition.  That claim is non-dischargeable.

An appropriate judgment in the amount of $11,415.00 only shall issue.

Upon entry of this Memorandum the Clerk shall forward copies to the Plaintiff and James Joyce, Esq., counsel for the Defendant.

Entered on this 25th day of July, 2005.

_____
William E. Anderson
United States Bankruptcy Judge